THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN PALMIERI, Relator, v. JOSIAH T. MAREAN, one of the Justices of the Supreme Court of the State of New York, Respondent.

*Commitment for a criminal contempt in the immediate presence of the court — when it does not sufficiently specify the particular circumstances of the offense.*

A mandate of commitment for a criminal contempt committed in the immediate view and presence of the court, which does not specify the particular circumstances of the offense, as required by section 11 of the Code of Civil Procedure, is defective, and such defect will be held fatal upon a review of the proceedings by certiorari, although the papers before the reviewing tribunal clearly establish the sufficiency of the proof to sustain the conviction.

A statement in the commitment to the effect that the offender, in the immediate view and presence of the court, behaved in an insolent and disorderly manner, which tended to interrupt the proceedings of the court and to impair the respect due to its authority, is not a sufficient statement of the particular circumstances of the offense.

GOODRICH, P. J., dissented from the last proposition.

CERTIORARI issued out of the Supreme Court and attested on the 27th day of August, 1902, directed to Josiah T. Marean, one of the justices of the Supreme Court of the State of New York, requiring him to certify and return to the office of the clerk of the county of Kings all and singular his proceedings had in adjudging the relator guilty of a criminal contempt of court, committed in the presence of the court, and imposing upon him a fine of fifty dollars.

*John Palmieri,* relator, in person.

*John F. Clarke,* for the respondent.

WILLARD BARTLETT, J.:

The facts which the return states to have occurred before Mr. Justice MAREAN in my opinion are sufficient to uphold an adjudication finding the relator guilty of contempt; and I should have no hesitation in agreeing with the presiding justice were it not for the decision of the Court of Appeals in the case of *People ex rel. Barnes v. Court of Sessions* (147 N. Y. 290) in regard to the contents of the commitment in such a proceeding as this. There, although the

court assumed that the evidence was sufficient to warrant the conviction, the adjudication was reversed and the proceeding dismissed on the ground that the mandate of commitment did not specify the particular circumstances of the relator's offense, as required by section 11 of the Code of Civil Procedure. In other words, this omission in the commitment is held to be fatal upon a review of the proceedings by certiorari, although the papers before the reviewing tribunal clearly established the sufficiency of the proof to sustain the conviction of the relator.

The authority or correctness of this decision cannot be questioned here, and it is impossible to sustain this conviction without disregarding the rule therein laid down, unless we are prepared to hold that the statement in the commitment or final order, to the effect that the relator, in the immediate view and presence of the court, behaved in an insolent and disorderly manner which tended to interrupt the proceedings of the court and impair the respect due to its authority, is a sufficient statement of the particular circumstances of the offense. The presiding justice thinks it is enough, but I find myself unable to adopt that view. The statement that an attorney behaved in an insolent and disorderly manner conveys no idea whatever as to the particulars of his conduct. There are scores of ways in which insolence may be manifested, and innumerable sorts of disorderly behavior. It is difficult, of course, in a written statement, to convey to the mind of the reader a photographic impression of what occurred at the time of an alleged contempt, such as this, but the facts set out in this very return show that it is entirely possible to particularize to some extent and lay before the tribunal of review, in the commitment or final order itself, the very circumstances which are relied upon as constituting the offense. I think that the decision in the *Barnes* case requires this to be done, and that, because it has not been done in the case at bar, it is our duty to annul the determination. Were it not for the authority cited, I should be disposed to hold that the facts stated in the return might be regarded as helping out the commitment sufficiently to sustain the conviction.

WOODWARD and JENKS, JJ., concurred; GOODRICH, P. J., read for affirmance.

GOODRICH, P. J. (dissenting):

The relator seeks by writ of certiorari to review a determination of Mr. Justice MAREAN, adjudging the relator guilty of a criminal contempt committed in the immediate presence of the court, while the relator, as counsel for a defendant, was conducting a trial before the justice and a jury.

Section 2138 of the Code of Civil Procedure provides that where a writ of certiorari is issued by the Appellate Division to review the determination of an inferior tribunal in a case like the one at bar, it must be heard upon the writ and return and the papers upon which the writ was granted. These papers show that the order under review was entered in an action based on a claim that the plaintiff as a broker had sold two houses to the defendant therein, and had paid to it a portion of his brokerage commission on the consideration that he should have the leasing of the property. Relator was counsel for the defendant. The plaintiff was under examination as a witness on his own behalf when the occurrence upon which the relator's contempt is predicated arose. The petition contains the stenographer's minutes of the testimony and the return embodies the same testimony, with the allegations of the justice in regard thereto in brackets, as follows: "Q. In the month of February last, 1902, did you have the sale of two buildings known as 320 and 322 East 113th Street? A. Yes, I sold those two houses to this corporation, Societa Co-operativa Corleonese Francesco Bentivegna —. Q. (By the Court): You sold it as a broker? A. Yes, sir. I sold these two houses to these same people who are here to-day —. Q. Who was the owner of these premises? A. P. L. Marlow. Q. What was the consideration price of that? [Objected to as immaterial, incompetent and irrelevant. Objection sustained.] Q. You received a commission on that? A. Yes, I received $500, and out of these $500 I paid $300 to these people — [Objected to.] Witness [Continuing]: In consideration that they would give me the privilege of leasing their property. I want to say what I have to say —. [Objected to.] Witness: I want just to say what I — in a legal way, your Honor. Mr. Palmieri: The judge is here to say as to that. Witness: The judge don't object to what I have to say. Mr. Palmieri: That question called for yes or no, and I move to strike out everything else this witness

stated. The Court: I will allow them to prove that he divided commissions with your people, which he got on the sale of the land, if you propose to prove that, in consideration of that, they agreed to let him have the renting of it. Mr. Oishei: That is it. Witness: I gave more than half — beg your pardon, your Honor — I gave them more. Mr. Palmieri: I move to strike that out. Mr. Oishei: You must not say anything when Mr. Palmieri makes an objection; you must stop and let the Court rule on it. Witness: All right — I didn't know that — first time, you know. Mr. Palmieri: First time? Witness: In court, yes. [Upon this the following occurred]: The Court: Now sit down, Mr. Palmieri. Mr. Palmieri: Then I object. [At this time there was no unanswered question pending, nor anything else to which an objection could intelligently refer. He did not sit down and made no motion to do so.] The Court: Do you hear me? Mr. Palmieri: I have an objection to make, your Honor. [He still remaining standing and made no motion to sit down.] The Court: Sit down, there is nothing before the Court. Mr. Palmieri: Does your Honor at this time refuse me to make an objection? [He still remaining standing and made no motion to sit down.] The Court: I require you to sit down or I will punish you, and I will do it now. When I tell you to sit down and you do not sit down, you will be punished. [Upon this Mr. Palmieri sat down and instantly arose again and proceeded.] Mr. Palmieri: I ask to make an objection now. The Court: To what? Mr. Palmieri: *First, I ask your Honor to instruct the jury that the statement made by your Honor in the presence of this jury that you would punish me for contempt is a statement that is not warranted in this case at all, prejudicial to my client's rights, and I take an exception to your Honor making any such statement in the presence of this jury.* The Court: Now sit down; if you do not apologize for what you have said at once, I shall punish you on the spot. Now take your choice. Mr. Palmieri: For what, your Honor; I would like to know for what. [The request of Mr. Palmieri was read by the stenographer, it being the matter italicized above.] The Court: Now, you apologize for making that request of me. Mr. Palmieri: Upon the direction of the Court, I apologize —. The Court: No, you do not do it on the direction of the Court; either you do it without any such proviso or I will

punish you. Mr. Palmieri: After the Court has made the state-
ment I comply with that statement by apologizing and taking an
exception. The Court: I do not take that. I fine you $50 for
contempt, and you stand committed until it is paid. Withdraw a
juror in this case. Mr. Palmieri: I will pay the money under
protest. The Court: You can pay the money any way you like.
Mr. Palmieri: We can try the case in the meantime? The Court:
No. Withdraw a juror."

The return also states that " During the whole time after he was
first directed to sit down, Mr. Palmieri's tone, air and bearing were
flagrantly insolent, defiant and offensive toward the court and in
connection with what he did and said, and refused to do, as above
detailed, tended directly to interrupt the proceedings of the court
and to impair the respect due to its authority. Thereupon the court
so determined and summarily adjudged him guilty of a criminal
contempt and fined him $50. And caused the following entry to
be made in the minutes: ' John Palmieri was adjudged guilty of a
criminal contempt in that he did on this 20th day of June, 1902,
during the sitting of the court, in its immediate view and presence,
behave in an insolent and disorderly manner, which behavior tended
directly to interrupt the proceedings of the court and to impair the
respect due to its authority, whereupon said Palmieri was fined
Fifty ($50) Dollars which he paid to the clerk in attendance. Mr.
Palmieri paid the fine to the clerk saying that he paid under
protest.' "

Under section 2135 of the Code of Civil Procedure the relator
could have applied for an order for a further return; but as he did
not do so, we must accept the allegations of fact in the return as final.
There can be no question but that these allegations are sufficient to
justify the action of the court in adjudging the relator guilty of a
criminal contempt, and we should have no hesitation in dismissing
the writ except for the condition of the entry in the minutes of the
court. In regard to this, the question arises whether, as required by
section 11 of the Code of Civil Procedure, " the particular circum-
stances" of the offense are set forth in the mandate of commitment.
The relator cites *People ex rel. Barnes* v. *Court of Sessions* (147
N. Y. 290) as authority that the final order, or commitment, or
mandate must designate the particular misconduct of which the

defendant is convicted.   The court in that case said (p. 297): " The reason for the statute is perfectly apparent.   In the criminal contempts committed in the immediate view of the court it may punish summarily.   The only record preserved is in the final order or mandate of the court entered in the minutes of the clerk.   If the particular circumstances of the offense were not required to be set forth, there would be nothing that the accused could have reviewed, or that he could interpose as a defense to a subsequent conviction for the same act.   If the court saw fit to call his act, no matter what it might be, a criminal contempt, that determination would of necessity be final, even though the act of the accused consisted in the putting on of his hat as he was going out of the court room door, and failed to come within any of the provisions of the Code constituting a contempt of the court."   But the decision adjudging the relators guilty of contempt, which the Court of Appeals reversed, was based on an entry which merely stated that the defendants were " guilty of criminal contempt of court," without any further specification of the particular circumstances of the offense.   The contempt was not based on any action in the immediate presence of the court but upon the fact that the relators in that case had published in the editorial columns of their newspaper an article which, in the language of the opinion, " reflected seriously upon the motives and action of the judge presiding at the Court of Sessions."   In that case there would have been no difficulty in setting out in the entry the article and its publication as the particular circumstances.   But the case at bar is very different.   This was a contempt committed in the immediate view and presence of the court and was of such a character that it is somewhat difficult to make a statement embodying the particular circumstances with such particularity as to identify absolutely the offense, to the exclusion of any similar offense at the same trial. The order states that the relator. in the immediate view and presence of the court, behaved in an insolent and disorderly manner which tended to interrupt the proceedings of the court and impair the respect due to its authority.   That is, in my opinion, a sufficient statement of the particular circumstances of the relator's offense. It is true that the entry might have gone farther, but it was sufficient to enable the relator to appeal if he had so desired.

The order uses the language of section 8 of the Code of Civil Procedure, and even in an indictment for a statutory misdemeanor, this would have been sufficient where the indictment contained averments as to time, place, person and other circumstances to identify the particular transaction. (*People* v. *West*, 106 N. Y. 293.)

For these reasons I think that the writ should be dismissed, with costs.

Determination annulled, without costs.